IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-02724-MSK-SKC

JASON KIRKLAND,

    Plaintiff,

v.

ROBERT W. BAIRD & CO., INCORPORATED,,

    Defendant.

---

### DEFENDANT/COUNTERCLAIM PLAINTIFF'S MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL

---

Defendant/Counterclaim Plaintiff Robert W. Baird & Co., Inc. ("Baird" or "Defendant"), by and through its counsel, respectfully submits the following Motion to Disqualify Plaintiff's Counsel (the "Motion"). As explained below, Plaintiff Jason Kirkland's counsel *and* current employer – Dochtor Kennedy – has personal knowledge of material facts in this matter and will be a witness in this case. Accordingly, he must be disqualified from any further representation of Plaintiff pursuant to Rule 3.7 of the Colorado Rules of Professional Conduct to maintain the fairness of the proceedings and avoid prejudice to Baird.

### **CONFERRAL**

Baird's counsel first conferred with Plaintiff's counsel about his past professional relationship, and current employment, of Plaintiff—and the potential conflicts that might arise during discovery and ultimately trial in this matter given those relationships—at the Rule 26(f) conference. Counsel for both sides agreed to further consider the matter and discuss with their

respective clients.  Since the 26(f) conference, other developments in this matter have further placed Kennedy as a necessary witness in this matter, including Baird's discovery that Plaintiff has intentionally interfered with Baird's business relations and is continuing to violate his contractual obligations to Baird *in connection with his employment by Kennedy*.  (*See* Dkt. # 24.)  On January 4, 2019, and again on January 9, 2019, (by e-mail and phone, respectively) counsel for Baird again conferred with Kennedy about his personal knowledge of material facts that make him a necessary witness in this matter and requested he withdraw as counsel for Plaintiff.  Plaintiff and Kennedy oppose this Motion.

## INTRODUCTION

Plaintiff initiated this lawsuit against Baird, his former employer, claiming he is entitled to recruiting commissions for individuals he expects may join Baird in the future, among other things.  Baird asserts counterclaims for Plaintiff's breach of his non-disclosure and non-solicitation obligations, failure to repay debts owed to Baird in connection with two promissory notes, breach of the implied duty of good faith and fair dealing, and tortious interference with Baird's prospective business relations.

Baird now moves for the disqualification of Plaintiff's counsel, Dochtor Kennedy, AdvisorLaw, LLC, pursuant to Rule 3.7 of the Colorado Rules of Professional Conduct (hereinafter "Rule 3.7"), the "Lawyer as Witness" rule.[1]  With certain limited exceptions not applicable here, Rule 3.7 requires disqualification of an attorney who "is likely to be a necessary

---

[1] Kennedy is the only attorney who has entered an appearance on behalf of Plaintiff.  However, another attorney has been indirectly referenced by Plaintiff on certain pleadings – Michael Bessette, HLBS Law, an affiliate of AdvisorLaw.  To the extent Kirkland also intends Bessette to represent him in this matter – despite failing to enter an appearance since the Complaint was filed in October 2018 – Baird reserves the right to amend this Motion to also disqualify Bessette.

2

witness" at trial. Kennedy—who is also Plaintiff's current employer—possesses material knowledge of important matters related to counterclaims Baird has asserted in this action and will be a necessary witness. Indeed, Baird's counterclaims directly involve Plaintiff's "professional alliance" and moonlighting activities for Kennedy during Plaintiff's employment with Baird, as well as his ongoing activities as a current employee of Kennedy that violate Plaintiff's contractual and common law obligations to Baird.

Kennedy's personal knowledge of Plaintiff's past and ongoing activities that gave rise to Baird's counterclaims are not merely peripheral to this matter. They are material. Kennedy has impermissibly positioned himself as attorney and employer for Plaintiff in this employment lawsuit, making him a necessary fact witness. If Kennedy is permitted to serve as both advocate and witness, calling Kennedy as a witness would force Baird to depose and then question opposing counsel on the witness stand, which would create bias and/or confusion with the jury, lead to assertions of attorney-client privilege, and result in prejudice to Baird. These and other inevitable consequences mandate Kennedy's disqualification under Rule 3.7.

## RELEVANT FACTUAL BACKGROUND

**A.    Plaintiff's Employment with Baird.**

Baird is a financial services company that offers its customers sophisticated asset management services. Baird hired Plaintiff on or about March 15, 2016 as Senior Vice President of Experienced Advisor Recruiting. As a condition of his employment with Baird, Plaintiff entered into non-disclosure and non-solicitation agreements with Baird. (*See* Dkt. #3, pp. 14-15 (collectively the "Agreements").) The Agreements provided for non-disclosure of confidential and proprietary information and, further, provided for non-solicitation of customers and

3

employees for 12-months after Plaintiff's employment ended.  (*Id.*)

While employed by Baird, Plaintiff asked Baird for permission to perform off-duty work for AdvisorLaw, LLC ("AdvisorLaw").  Plaintiff's counsel in this lawsuit—Kennedy—is the President and Founder of AdvisorLaw.  (*See* Dochtor Kennedy's LinkedIn page attached as Ex. A.)  Specifically, Plaintiff requested to receive a referral fee from AdvisorLaw:

> I have a past relationship before joining Baird with an attorney who specializes in helping financial advisors with any U4 issues they may have.  He would like to pay me a referral fee for any advisor that I refer to him if they need any help with clearing up a ding on their U4.  This is not an everyday thing but I do run across these scenarios on a monthly basis.

(Dkt. # 24-6; *see also* Dkt. # 24-2 at ¶ 10.)  Plaintiff estimated his referral fees from AdvisorLaw amounted to $5,000 to $10,000 annually.  (*Id*.)  Kennedy referred to his relationship with Plaintiff as a "professional alliance."  (Ex. B.)

Baird denied Plaintiff's request given the conflict of interest posed by the request, and unequivocally informed Plaintiff he did *not* have permission to continue this referral relationship.  (Dkt. # 24-2 at ¶ 10.)  Upon information and belief, Plaintiff continued to perform work and receive referral fees from AdvisorLaw while still employed by Baird in violation of Baird's policies and express orders.  (*Id.*)

**B.     Plaintiff's Post-Termination Acts and This Lawsuit.**

Baird terminated Plaintiff's employment on August 2, 2018 for, among other things, failing to follow management's directive to provide recruiting assistance throughout the country; purposely removing a territory from his recruiting efforts without authorization from Baird

4

management; misleadingly altering SalesForce notes[2] related to a commissions dispute; and undermining management by telling fellow employees he planned to resign from Baird. (Dkt. # 24-2 at ¶ 11.) Around the time Plaintiff was telling other Baird employees he planned to resign, Baird discovered Plaintiff had also sent to his personal e-mail address at least two documents containing confidential information related to Baird prospects that Plaintiff was given access to as part of his Baird job duties. Plaintiff has not returned those documents to Baird. (*Id*. at ¶ 12.)

Plaintiff is currently working for AdvisorLaw as an "Executive Director." In this role, Plaintiff is recruiting and placing financial advisors, as well as working on record expungement for financial advisors. (Dkt. # 24-8.) To assist him in these duties, Plaintiff has attempted to solicit other Baird employees to moonlight for AdvisorLaw for the benefit of Plaintiff and/or AdvisorLaw and to the detriment of Baird. Specifically, Plaintiff has offered to pay referral fees to current Baird employees for referring any prospective Baird financial advisors who need assistance with record expungement. (*Id*.)

Plaintiff filed this lawsuit on September 28, 2018, alleging he is owed more than $4 million in future anticipated compensation from Baird, based on his alleged "pipeline of potential recruits." (Dkt. # 3, ¶ 70.) On November 7, 2018, Baird answered and asserted the following counterclaims against Plaintiff: (1) breach of contract for failure to repay debts owed under two promissory notes; (2) breach of contract (misappropriation of Baird's confidential information); (4) breach of contract (non-solicitation of Baird employees); and (5) breach of the implied duty of good faith and fair dealing. (Dkt. # 10.)

The Scheduling Conference was held on December 5, 2018, and the Scheduling Order

---

[2] SalesForce is the customer relationship management software utilized by Baird.

5

was entered by the Court on that same day. (Dkt. # 19.) Other than the exchange of initial disclosures, discovery has not yet begun. No trial date is set.

**C.      The Hilliard Acquisition.**

On or around November 27, 2018, Baird and J.J.B. Hilliard, W.L. Lyons, LLC ("Hilliard") publicly announced they signed a definitive agreement for Hilliard to join Baird. (Dkt. # 24-2 at ¶ 15.) On the same day the acquisition was announced, Plaintiff's counsel sent an email to the undersigned stating:

> I saw the news wire that your client is acquiring Hilliard Lyons.
>
> It is almost certain that every recruiter on the planet will spend the next week or so contacting Hilliard's 380+ reps and telling them that they can get two or three times the money if they transition out rather than accepting Baird's retention offering.
>
> The exposure to your client on the acquisition is high. With the cost of purchasing Hilliard, there will not be a lot of money left over to pay the retention for the Hilliard reps. At best Baird will be able to cobble together another $200MM - $250MM in gross retention offerings to the Hilliard reps in exchange for their commitment to stay at Baird instead of simply transitioning to another firm.
>
> The problem is that transitioning clients from Hilliard to Baird is no easier than transitioning clients from Hilliard to any other employee B/D (e.g., Ameriprise, Stifel, RBC, Raymond James, et cetera). The kicker is that these other firms are flush with cash and credit facilities which they tap to offer anywhere between 200% - 350% of T12. Which pales in comparison to the 70% - 80% T12 Baird will be able to offer.
>
> I encourage you to let your client know that the recruiters (who will undoubtedly be all over the Hilliard reps over the next week or so) are going to try to convince all Hilliard reps that Baird is inferior to Ameriprise, Stifel, or some other B/D looking to grow. If my client is contacted and asked for his opinion, he is currently not prohibited from speaking truthfully and openly with any such Hilliard reps with whom he comes into contact. With such a small number of reps and the relative significance of making this transaction pencil for your client, it may be prudent to consider the exposure which my client poses.

> That being said, perhaps my client will be too busy with his current work to entertain calls from Hilliard reps discussing Baird or how they treated him. Perhaps my client won't see the same news wire that I saw.
>
> I just wanted to share a few thoughts that raced through my mind when the news wire came across my desk.

(Dkt. # 24-7.)

Thereafter, Baird discovered Plaintiff was blindly attempting to contact Hilliard advisors who were expected to join Baird after the acquisition, noting that "moving your book is an important decision" and promising a "behind the curtain look" and "insider's experiences" into Baird's business.  (Dkt. # 24-1; *see also* Dkt. # 24-2 at ¶ 16.)  Given Kennedy's preceding e-mail threatening the "exposure" which his client poses and recognizing Baird's significant interest in retaining Hilliard advisors after the acquisition, it is apparent the purpose behind Plaintiff's attempts to communicate with Hilliard advisors is to convince them not to remain employed by Baird after the acquisition so that Plaintiff can place those recruiters at a different company for the benefit of his current employer, AdvisorLaw.  At a minimum, Baird is entitled to do discovery on the "intent" behind Kennedy's email and Kennedy's knowledge of Kirkland's subsequent contacts with Hilliard employees.

On December 20, 2018, Baird moved to amend its counterclaims to assert an additional claim for tortuous interference with business relations.  (Dkt. # 23.)  Baird further filed a Motion for Preliminary Injunction on December 21, 2018, asking the Court to enjoin Plaintiff from tortuously interfering with Baird's business relations and continuing to possess, use, and/or disclose Baird's confidential information.  (Dkt. #24.)  Plaintiff's Response to the Motion for Preliminary Injunction is currently due January 11, 2019.

7

# ARGUMENT

Plaintiff's counsel and current employer, Dochtor Kennedy, is a necessary witness in this litigation and must be disqualified pursuant to Rule 3.7.

## A.     The Purpose of Rule 3.7.

Like its counterparts in most state and federal jurisdictions, Rule 3.7 prohibits an attorney from acting as both advocate and witness and provides, in relevant part, that:

> (a)     A lawyer shall not act as an advocate at trial in which the lawyer is likely to be a necessary witness unless:
>
> > (1)     the testimony relates to an uncontested issue;
> >
> > (2)     the testimony relates to the nature and value of legal services rendered in the case; or
> >
> > (3)     disqualification of the lawyer would work substantial hardship on the client.

Colo. RPC 3.7.  If the lawyer is a necessary witness and the exceptions in Rule 3.7(a) are not met, disqualification is mandatory.  *Id.*

"Combining the roles of advocate and witness can create a conflict of interest between the attorney and the client because a lawyer cannot act as an advocate on behalf of his client, and yet give testimony adverse to the interests of the client in the same proceeding."  *People v. Finley*, 141 P.3d 911, 914-15 (Colo. App. 2006) (internal quotations omitted); *see also* Colo. RPC 3.7, Comment 1 (2012).  The overriding purpose of the attorney-witness rule is to avoid prejudice associated with jury confusion.  *Fognani v. Young*, 115 P.3d 1268, 1276-77 (Colo. 2005).  The rule avoids such prejudice by eliminating jury confusion about the lawyer's role in the judicial process:

8

> As an advocate, the lawyer's task is to present the client's case and to test the evidence and arguments put forth by the opposing side. A witness, however, provides sworn testimony concerning facts about which he or she had personal knowledge or expertise. When a lawyer takes on both roles, jurors are likely to be confused about whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.

*See* ABA's Annotated Model Rules of Professional Conduct (5th ed.) (internal quotations omitted). In other words, the rule prohibiting a lawyer from acting as both attorney and witness, "is designed to preserve the distinction between advocacy and evidence and to protect the integrity of the advocate's role as an independent and objective proponent of rational argument." *See* ABA/BNA Lawyers' Manual on Professional Conduct 61:501 (1998).

Jury confusion about the lawyer's role can call into question the impartiality of the judicial process and, of equal concern, may prejudice the opposing party:

> The tribunal has proper objection when the trier of fact may be confused or misled by a lawyer serving as both advocate and witness. The opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.

Colo. RPC 3.7, Comment 2 (2012).

Prejudice to the opposing party can take various forms. The act of testifying under oath may enhance the credibility of the attorney as an advocate and thus cause prejudice to the opposing party. *Dunn v. Miceli*, 2015 WL 1868134, at *7 (D. Colo. Apr. 22, 2015). Rule 3.7 is also designed to prevent prejudice to the testifying attorney's own client. If the attorney is not credible as a witness, his or her effectiveness as an advocate may be in jeopardy, which could cause prejudice to his or her own client. *Id.; see also Cottonwood Estates Inc. v. Paradise Builders Inc.*, 624 P.2d. 296, 300 (Ariz. Sup. Ct. 1981) (noting "like any witness, the attorney is

9

subject to cross-examination on any relevant matter . . . including the professional and financial interest in the outcome of the litigation . . . and impeachment by the usual methods of demonstrating bias or prejudice").

Ultimately, "a lawyer who intermingles the functions of advocate and witness diminishes his effectiveness in both cases." *Fognani,* 115 P.3d at 1272 (citation omitted).

**B.     Plaintiff's Counsel of Record Is a Necessary Witness.**

A lawyer is a "necessary" witness if his or her testimony is relevant, material, and unobtainable elsewhere. *World Youth Day, Inc. v. Famous Artists Merch. Exch., Inc.*, 866 F. Supp. 1297, 1302 (D. Colo. 1994). The question is not simply *whether* a party will call a lawyer as a witness, but whether the attorney *ought* to be called as a witness. *FDIC v. Isham,* 782 F. Supp. 524, 528 (D. Colo. 1992).

In this case, Kennedy's testimony is necessary and material to Baird's counterclaims. The essential questions underlying Baird's counterclaims are whether:  (1) Plaintiff breached his implied and express contractual obligations to Baird by entering into a "professional alliance" with Kennedy during his employment with Baird in violation of Baird's policies and direct orders; (2) whether Plaintiff is abiding by his non-disclosure, non-solicitation, and other ongoing contractual obligations to Baird as an "Executive Director" for Kennedy; and (3) whether Plaintiff tortuously interfered with Baird's business relations by contacting Hilliard financial advisors and attempting to convince them not to remain employed by Baird after the acquisition in connection with his employment by Kennedy. To be sure, Kennedy has personal knowledge and discoverable information about each of these issues. For example, the scope of the "professional alliance" will be the subject of discovery and will unavoidably involve testimony

of Plaintiff *and* Kennedy concerning the duration and objectives of the alliance to determine the extent to which the alliance conflicted with Baird's interests and violated Baird's policies. Similarly, discovery into whether Plaintiff is abiding by his non-solicitation and non-disclosure obligations as a recruiter and "Executive Director" for AdvisorLaw will require not only deposition testimony from Kennedy about his employee's activities, but written discovery into communications between Kennedy and Plaintiff about those activities.

In fact, Kennedy directly inserted himself as a fact witness in this case when he sent an email to the undersigned threatening the "exposure" his client poses to convince Hilliard financial advisors to transfer their book of business to Baird's competitors. (Dkt. # 24-7.) This e-mail is at the heart of Baird's intentional interference with business relations claim, and will necessarily involve discovery into the intent behind the email and any communications between Plaintiff and his counsel about the existence, content, timing, and purpose of Plaintiff's communications with Hilliard financial advisors. Kennedy's testimony about these issues cannot be obtained elsewhere. *See, e.g., Stanton v. Encompass Indem. Co.*, 2012 WL 3638795, at *4 (D. Colo. Aug. 23, 2012) (M.J. Mix) (disqualifying counsel where his communications and interactions with the defendant were relevant and material, and testimony regarding such communications could not be obtained elsewhere).

Thus, as Plaintiff's employer, Kennedy has significant knowledge about the facts underlying this dispute. Without Kennedy's testimony regarding these points and others, Baird's ability to defend itself will be prejudiced. Courts have consistently applied Rule 3.7 to require disqualification in similar cases. *See, e.g., Fognani,* 115 P.3d at 1272*; World Youth Day, Inc.,* 866 F. Supp. at 1303-04 (D. Colo. 1994) (noting attorney was a necessary witness where he

11

participated in "numerous and lengthy telephone negotiations concerning the agreement . . . the contents of which [were] directly relevant to the [moving party's] claims for breach of implied contract and breach of the duty of good faith"); *United States v. Iorizzo*, 786 F.2d 53, 57 (2d Cir. 1986) (ordering a new trial and ruling that counsel should have been disqualified due to the attorney's firsthand involvement in the matter described by the prosecution witness, which would cause any argument to the jury to be viewed as statement of witness as well as advocate); *Stewart v. Bank of America, N.A.*, 203 F.R.D. 585, 587 (M.D. Ga. 2001) (holding the attorney's testimony relating to a foreclosure transaction is necessary because the attorney had "first-hand knowledge of many relevant and material facts at issue").

In sum, Tenth Circuit case law and other authority make clear Kennedy will be a necessary witness at trial, as his testimony on numerous issues is essential to resolution of Baird's counterclaims, primarily Plaintiff's ongoing activities as Kennedy's employee that breach Plaintiff's common law and contractual obligations to Baird. The "rationales for the advocate-witness rule are particularly acute in a case such as this," and Plaintiff's counsel simply cannot maintain multiple roles as advocate, employer, and witness in this matter. *Fognani*, 115 P.3d at 1274.

### C. Baird Will Be Significantly Prejudiced if Plaintiff's Counsel of Record Is Not Disqualified.

In determining whether an opposing party is likely to suffer prejudice, one must analyze the inherent policy considerations found in Rule 3.7, and examine "the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses." Colo. RPC 3.7, Comment 4 (2012).

12

There is no question that if Plaintiff's counsel of record is not disqualified, Baird will suffer severe prejudice because the jury may confuse counsel's role as advocate, witness, and employer, and give one side or the other an unfair advantage in rebutting or advancing their positions at trial. Kennedy's dual role in this case is not tangential or minor; it is central. If not disqualified, Kennedy's testimony will play a key role in the jury's determination of whether Plaintiff intentionally interfered with Baird's business relations and whether Plaintiff breached (and is continuing to breach) his contractual obligations to Baird, all while Kennedy simultaneously advances legal arguments and acts as advocate for his client.

This is prejudicial to Baird because, as the foregoing authorities recognize, the act of testifying under oath may enhance the credibility of the attorney as an advocate and in turn the jury may erroneously grant testimonial weight to an attorney's arguments. *See, e.g., Fognani,* 115 P.3d at 1272 ("The client's case is subject to criticism that is being presented through the testimony of an obviously interested witness who on that account is subject to impeachment, and, of equal importance, placed in the unseemly position of arguing his own credibility to the jury."); *Cerros v. Steel Techs., Inc.,* 398 F.3d 944, 955 (7th Cir. 2005) (noting that when an attorney offers testimony, it may not be clear whether a statement by an attorney-witness should be taken as proof); *United States v. Birdman*, 602 F.2d 547, 554 (3d Cir. 1979) (noting that a prosecutor's testifying may create confusion on the part of the jury and result in the fact finder according testimonial credit to closing arguments). If the jury gives more weight to the explanations of Plaintiff's counsel of record regarding these material issues because he is also Plaintiff's advocate, this would unduly prejudice Baird. *See e.g., In re Am. Cable Publ'ns, Inc.*,

768 F.2d 1194, 1196 (10th Cir. 1985); *United States v. Morris*, 714 F.2d 669, 671 (7th Cir. 1983); *Bottaro v. Hatton Assocs.*, 680 F.2d 895, 896-97 (2d Cir. 1982).

Moreover, the possibility that Kennedy's personal knowledge and testimony will directly conflict with his client's position also warrants disqualification. Kennedy cannot continue to serve as counsel and zealously represent Plaintiff in this case to the extent he has direct knowledge of any factual flaws in his client's current position and defenses to Baird's counterclaims. Kennedy also has a personal interest in this case given the counterclaims involve ongoing activities by Kennedy's current employees that benefit his company, which poses a further conflict of interest in violation of the Colorado Rules of Professional Conduct. *See* Colo. RPC 1.7 (prohibiting a lawyer from representing a client where "there is a significant risk that [the lawyer's] representation of one or more clients will be materially limited . . . by a personal interest of the lawyer.").

Further, there can be no question that Plaintiff's current employment with AdvisorLaw and the "professional alliance" that existed during Plaintiff's employment with Baird will involve substantial *non-privileged* communications between Plaintiff and Kennedy. But, there will be no clear line between privileged and non-privileged communications between Kennedy and Plaintiff. To the extent Plaintiff's counsel objects to the discoverability of communications (written or oral) based on privilege grounds, complex discovery disputes will inevitably arise and unnecessarily burden the Court and the parties.

In view of the foregoing prejudice to Baird if Kennedy continues his representation, he must be disqualified as Plaintiff's counsel in these proceedings.

**D.     None of the Exceptions to Rule 3.7 Apply.**

Plaintiff and his counsel of record cannot meet any of Rule 3.7's exceptions to avoid disqualification.

Most, if not all, of the testimony by Plaintiff's attorney will be with respect to contested issues, as set forth above. Therefore, the first exception does not apply. Colo. RPC 3.7(a)(1). In addition, the testimony by Plaintiff's attorney will not involve the nature and value of legal services rendered in this action. Consequently, the second exception does not apply. Colo. RPC 3.7(a)(2).

That leaves the third exception – whether disqualification would impose a substantial hardship on Plaintiff. Colo. RPC 3.7(a)(3). The hardship analysis requires a balancing "between the interests of the client and those of the tribunal and the opposing party." Colo. RPC 3.7, Comment 4 (2012). Courts look to several factors when making this determination including "the nature of the case, financial hardship, giving weight to the stage in the proceedings, and the time at which the attorney became aware of the likelihood of his testimony." *Fognani,* 115 P.3d at 1275 (citing *World Youth Day, Inc.,* 866 F. Supp. at 1304 (D. Colo. 1994)).

In *Fognani,* the Colorado Supreme Court held disqualification was proper and would not constitute substantial hardship where the parties were in the midst of discovery and the "record indicate[d] that the likelihood of [attorney-witness] status as a witness was apparent before [the] lawsuit was even filed. . ." *Fognani,* 115 P.3d at 1275. Similarly, the likelihood that Plaintiff's counsel of record—as his current employer in this employment lawsuit involving ongoing restrictive covenant and other contractual obligations—would be called as a witness was apparent before the case was filed. Indeed, Kennedy was aware of his longstanding

15

"professional alliance" with Plaintiff *and* current employment of Plaintiff at the time the Complaint was filed. Although AdvisorLaw's website notes it "is not a law firm and does not provide legal services," Kennedy did not refer Plaintiff to another attorney. (Ex. C.) Instead, Kennedy proceeded down the extremely unusual path of representing his current employee in a lawsuit that relates to Plaintiff's former employment with Baird and ongoing breach of his non-disclosure and non-solicitation obligations as an employee of AdvisorLaw. This is simply not a case in which the attorney unexpectedly happened upon the relevant information after undertaking the client's representation. To the contrary, all activities that have been undertaken and all expenses that have been incurred in this action since that time have occurred with that knowledge. Plaintiff and his counsel cannot now avoid the consequences of their decision to intermingle the witness, employer, and advocate relationship by claiming undue hardship. To allow Kennedy to go forward now risks permitting "attorneys to remain mute when aware of the likelihood of their testimony, all the while hoping that his adversary will not recognize the problem until the case is well under way." *Dunn v. Miceli,* 2015 WL 1868134, at *7-8 (D. Colo. Apr. 22, 2015) (M.J. Wang) (disqualifying counsel who was the plaintiff's father and a fact witness from any representation in the matter) (internal quotations omitted).

Further, the parties have just begun the discovery phase and no depositions are set. There is ample time for a new attorney to learn the facts of this case, develop strategy, and advocate for Plaintiff through the entire discovery phase. Even if *some* financial expense and litigation delay results from disqualification, at this early stage of litigation, such expense and delay is insufficient to constitute *substantial* hardship for purposes of Rule 3.7. *Fognani*, 115 P.3d at 1275.

## **CONCLUSION**

Plaintiff's counsel possesses knowledge of facts that are indispensable to Baird's counterclaims. Kennedy is a necessary witness under Rule 3.7(a) and none of the three exceptions to disqualification exist. Accordingly, Kennedy must be disqualified from serving as Plaintiff's counsel in this action.

Respectfully submitted this 9th day of January, 2019.

>OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
>
>*s/ Michelle B. Muhleisen*
>Michelle B. Muhleisen
>Austin E. Smith
>2000 S. Colorado Blvd.
>Tower 3, Suite 900
>Denver, CO  80222
>Telephone:  303-764-6800
>Facsimile:  303-831-9246
>michelle.muhleisen@ogletree.com
>austin.smith@ogletree.com
>
>*Attorneys for Defendant/Counterclaim Plaintiff Robert W. Baird & Co., Incorporated,*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of January, 2019, I electronically filed the foregoing **DEFENDANT/COUNTERCLAIM PLAINTIFF'S MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Dochtor Kennedy, Esq.
doc@advisorlawyer.com


*s/ Linda R. Kerman*
Linda R. Kerman, Paralegal