IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-02724-MSK-SKC

**JASON KIRKLAND,**

    Plaintiff,

v.

**ROBERT W. BAIRD & CO., INCORPORATED,**

    Defendant.

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL

Plaintiff Jason Kirkland, by and through counsel, hereby submits this Opposition to Defendant's Motion to Disqualify Plaintiff's Counsel, and in support, states as follows:

## CONFERRAL

Defendant's assertion that the parties conferred regarding this question of Mr. Kirkland's counsel potential as a necessary witness is true, but not complete. Defendant's inclusion of allegations that Mr. Kirkland's counsel has engaged in conduct which does not conform with Colo. RPC 1.7 is inappropriate and premature; as she failed to meet and confer regarding the aforementioned alleged conflict.

## INTRODUCTION AND FACTS

Through a frivolous motions practice by Defendant's counsel, a theme begins to surface in the immediate case. Defendant began by promptly filing a Notice to remove to Federal Court. Defendant's Answer was filed on November 7, 2018 but was not served on Plaintiff's counsel.

Defendant filed an Amended Answer only one day prior to their Motion for a Preliminary Injunction, which was filed at 5:00 PM the evening before what is arguably the most widely recognized Federal holiday. And finally, followed by the immediate motion filed a mere eight business days later.

Mr. Kirkland has asserted several claims against the Defendant in this matter, all involving unpaid recruiting commissions due to him by his former employer, Baird. Defendant has also asserted several counterclaims against Mr. Kirkland. Relevant to this current pleading are Baird's claims that Mr. Kirkland has breached his non-disclosure and non-solicitation obligations to Baird; has breached his duty of good faith and fair dealing; and tortiously interfered with Baird's prospective business relations. (counterclaims 3-6 of amended answer). Defendant now seeks to disqualify Mr. Kirkland's counsel through an attenuated argument abundant with conjecture, assumptions, and falsehoods conceived through insufficient familiarity with the facts and circumstances giving rise to the underlying claims by Mr. Kirkland. Defendant's argument is essentially based around the fact that Mr. Kirkland and Mr. Kennedy have a previous and ongoing relationship outside of that of attorney-client, something which is not disallowed under any rule of procedure or professional conduct.

**RULE**

Colorado Rules of Professional Conduct ("C.R.P.C.") Rule 3.7 states that a lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness. C.R.P.C. 3.7. The rule enumerates some exceptions to the general standard, including an exception for cases in which disqualification of the lawyer would work substantial hardship on the client. Mr. Kirkland

argues that the rule does not apply in this case, or, in the alternative, that he would suffer a substantial hardship if Defendant's request to disqualify his counsel is granted.

C.R.P.C. Rule 3.7 only applies in scenarios in which a lawyer is a necessary witness in a case, not simply that a lawyer possesses information which could potentially be relevant to an issue in the case. In the immediate matter, Mr. Kirkland's counsel, Dochtor Kennedy, is not a necessary witness. Colorado law requires a showing by the Defendant that the proposed testimony of Mr. Kennedy is relevant, material, and unobtainable elsewhere. *World Youth Day v. Famous Artists Merchandising Exch.*, 866 F. Supp. 1297 (D. Colo. 1994). It is a high burden to meet and Defendant's assertion that Mr. Kennedy possesses some relevant information and that they may call him as a witness is not enough to meet that burden.

Further, courts in Colorado faced with motions to disqualify counsel have long recognized their potential for abuse as litigation tactics and have described disqualification as a "*drastic measure,*" to be imposed only when "*absolutely necessary.*" *See Weeks v. Samsung Heavy Indus. Co., Ltd.,* 909 F. Supp. 582 (N.D. Ill. 1996); *Zurich Ins. Co. v. Knotts,* 52 S.W.3d 555 (Ky. 2001); *City of Akron v. Carter,* 942 N.E.2d 409 (Ohio Ct. App. 2010); *Franklin v. Clark,* 454 F. Supp. 2d 356 (D. Md. 2006) ("courts are hesitant to grant disqualification motions . . . because they can be abused for tactical reasons"); *Klupt v. Krongard*, 728 A.25d 727 (Md. Ct. Spec. App. 1999) (courts closely scrutinize motions to disqualify opposing counsel due to concern that movant may use such motion to "block, harass, or otherwise hinder the party's case"); *S. & S. Hotel Ventures v. 777 S.H. Corp.*, 508 N.E.2d 647 (N.Y. 1987) (disqualification of lawyer denies party right to be represented by counsel of its choice, and can prolong and derail proceedings to strategic benefit of one party over another); *Utilimaster Corp. v. Dep't of State Revenue,* 967 N.E.2d 92 (Ind. T.C. 2012) (state revenue department's motion to disqualify opposing counsel was an "attempt to conceal its failure

to timely pursue discovery" and the court explained that "The Court will not countenance the Rule's abuse as a procedural weapon by invading [petitioner's] right to counsel of its choice.").

The fact that a party states an intention to call a lawyer as a witness is not sufficient for disqualification under the rule. *See Devins v. Peitzer,* 622 So. 2d 858 (Fla. Dist. Ct. App. 1993) (refusing to disqualify lawyer for estate merely because contestants announced intention to call him as adverse witness on their behalf); *City of Akron v. Carter,* 942 N.E.2d 409 (Ohio Ct. App. 2010) (party's stated intention to call opponent's lawyer to testify is "insufficient basis for disqualification" under Rule 3.7).

**ARGUMENT**

**A. Mr. Kirkland's Counsel is not a Necessary Witness Because Defendant Lacks a Basis Upon Which to Assert Its Third, Fourth, Fifth and Sixth Counterclaims.**

Underlying the Third, Fourth, Fifth, and Sixth counterclaims advanced by Defendant is the assertion that Mr. Kirkland is prohibited from 1) disclosing any confidential or proprietary information of Baird to any third party for any reason; and, 2) soliciting or encouraging Baird employees or clients to end their relationship with Baird. The restrictions are defined by covenants existing among three signed agreements, the Offer Summary dated February 29, 2016 and signed by all parties on March 2, 2016; the first Promissory note dated March 16, 2016; and the second Promissory note dated February 26, 2018 ("Notes"). Despite the similarities between the covenants in the Offer Summary and the Notes, the clauses differ slightly.

The confidentiality clause contained in the Offer Summary states as follows:

> The terms and amounts set forth in this letter are confidential and shall not be disclosed by you to others (except to your spouse, attorney or

accountants) within or outside of Baird without obtaining prior written consent from Mike Schroeder, President of Wealth Management, or his successor.

See Offer Summary.

The confidentiality clause contained in the Notes states as follows:

> [Mr. Kirkland] recognizes and acknowledges that all records, whether original, duplicated, computerized, memorized, handwritten, or in any other form, and all information contained therein, including names, addresses, telephone numbers and financial information of any account, customer, client, customer lead or prospect of Baird ("Baird Clients"), are valuable and unique assets of Baird's business, constitute proprietary property owned exclusively by Baird, and shall remain the property of Baird at all times during [Mr. Kirkland's] employment with Baird and after termination of [Mr. Kirkland's] employment for any reason with Baird. [Mr. Kirkland] agrees that all such records and information contained therein shall at all times be kept strictly confidential by [him] and that [he] shall not at any time during [his] employment or after termination of [his] employment for whatsoever reason . . . remove such records from the premises of Baird, either in original form or in computerized, duplicated, or copied form except with the permission of an office manager for the purpose of conducting the business of Baird. . . All of said records or any part of them are the sole proprietary information of Baird and shall be treated by [Mr. Kirkland] as confidential information of Baird.

See Notes.

The non-solicitation clause in the Offer Summary states as follows:

> You agree that for a period of twelve (12) months immediately following the termination of your employment with Baird for any reason, you will not, directly or indirectly, on behalf of yourself or any other person or entity, solicit, induce, recruit or encourage any of Baird's employees or consultants, who became known to you or with whom you interacted during the period of his employment with Baird, to terminate or reduce their relationship with Baird.

See Offer Summary.

The non-solicitation clause in the Notes states as follows:

> In addition to the foregoing, if, at any time, the Borrower resigns from Baird or his/her employment is terminated by Baird for any reason whatsoever: (i) the Borrower agrees that for a period of one year following his/her

> termination of employment with Baird, the Borrower will not solicit by mail, phone, personal meeting, or by any other means, either directly or indirectly, any Baird Client whom the Borrower served while employed at Baird or whose name became known to him/her by reason of his/her employment with Baird in any office in any capacity; and (ii) the Borrower agrees to return any original records and any computerized, duplicated, or copied records referred to in paragraph 7 which have been removed from the premises of Baird in any form. The Borrower further agrees that, while in the employ of Baird and for a period of one year after termination of his/her employment with Baird, the Borrower will neither confer nor discuss, either directly or indirectly, with any Baird employee, leaving the employ of Baird, nor confer or discuss, either directly or indirectly, with any Baird employee, employment by some other person or organization engaged as a broker/dealer or in a related line of business.
>
> For purposes of this Note, the Borrower's "agreement not to solicit" means that he/she will not, during his/her employment and for a period of one year thereafter, initiate any contact or communication, of any kind whatsoever, for the purpose of inviting, encouraging or requesting any Baird Client: (i) to transfer from Baird to the Borrower or to his/her new employer; (ii) to open a new account with the Borrower or with his/her new employer; or (iii) otherwise discontinue its patronage and business relationship with Baird.

See Notes.

The slight differences in the clauses binding Mr. Kirkland are irrelevant, as explained further below, as Mr. Kirkland's specific conduct is not in fact prohibited by any agreement contained in the Offer Summary or the Notes.

One alleged factual basis underlying the claims asserted by Defendant is that Mr. Kirkland performed work for AdvisorLaw, founded by Mr. Kennedy, while still employed by Defendant after specifically being instructed that he did not have permission to do so. However, no specific facts have been pled by Defendant that Mr. Kirkland shared any "confidential" information with AdvisorLaw as specified in either the Offer Summary or the Notes. Defendant only argues that Mr. Kirkland performed and was paid for any services whatsoever in violation of their instructions. Defendant fails to state sufficient facts to support their claim because Mr. Kirkland did not share

or use confidential information of Defendant in violation of any agreement. Mr. Kirkland did not receive any payment or other form of compensation from AdvisorLaw while still employed by Defendant and he did not perform any activities related to Defendant's associates or the work Defendant performs. While Mr. Kennedy could testify to this fact, so can the outside accounting firm utilized by AdvisorLaw as well as numerous other employees of AdvisorLaw. Mr. Kennedy is not a necessary witness in this regard.

A second alleged factual basis underlying Defendant's claims against Mr. Kirkland is that Mr. Kirkland is attempting to solicit both clients and employees of Defendant in the context of his present employment with AdvisorLaw and in violation of his non-solicitation agreement. Yet again, Defendant has not pled any specific instances of Mr. Kirkland violating the non-solicitation agreement in the context of his current employment. Defendant's mere assertion that Mr. Kirkland has "attempted to solicit other Baird employees to moonlight for AdvisorLaw" (Mtn to Disqualify, pg. 5) is not supported by any evidence of that fact. Defendant also asserts that Mr. Kirkland is "recruiting and placing financial advisors," (*Id.*) which is both misleading and irrelevant. AdvisorLaw does not perform Broker-Dealer services and is not in the "same or similar business as Baird" meaning that the non-solicitation clause does not apply to this particular scenario. Further, Defendant's loose assertion does not specifically state that he is "recruiting and placing financial advisors" that he learned of through his employment with Defendant. The non-solicitation clauses simply do not apply to the current employment activities of Mr. Kirkland. While Mr. Kennedy could testify to the specific job duties of Mr. Kirkland to further prove this fact, so can several other employees of AdvisorLaw. Mr. Kennedy is not a necessary witness in this regard.

The final alleged factual basis underlying Defendant's claims against Mr. Kirkland involves the recently announced decision of Defendant to acquire J.J.B. Hilliard, W.L. Lyons, LLC ("Hilliard"). Defendant alleges that Mr. Kirkland is reaching out to Hilliard's financial advisors currently faced with the decision to join Defendant in the Hilliard acquisition or to exit and join an unrelated firm. Mr. Kirkland admits that he contacted current Hilliard employees to offer them his perspective on his employment with Defendant. There is absolutely no authority, either from the Offer Summary or Notes or from Colorado law, that prohibits a former employee from sharing their general opinion on a particular workplace experience. Defendant's accusation that Mr. Kirkland "initiated a wide-spread smear campaign" is inflammatory and an untrue characterization of Mr. Kirkland's communications. While Mr. Kennedy may have knowledge of Mr. Kirkland's personal communications, that information would fall under attorney-client privilege and Mr. Kirkland may not be called to testify as to that knowledge. Even if some exception to attorney-client privilege applied, information relating to Mr. Kirkland's personal communications can be obtained elsewhere and Mr. Kennedy would certainly not be a necessary witness in this regard.

**B. Mr. Kirkland's Communications with Mr. Kennedy are Protected by Attorney-Client Privilege and Asserting a Potential Discovery Dispute is Premature.**

Defendant asserts that "there can be no question" that Mr. Kirkland's current employment with AdvisorLaw will involve substantial non-privileged communication between Mr. Kirkland and Mr. Kennedy. (Mtn to Disqualify, pg. 14). As such, Defendant argues, there could possibly be a discovery dispute and thus the Court should prematurely disqualify Mr. Kennedy to avoid this potential conflict. Both of those assertions lack merit. (*Id.*)

As dictated by the C.R.P.C. Rule 1.6(a-b), a Plaintiff's counsel "**shall not** reveal any information relating to the representation of a client unless the client gives informed consent, the lawyer's disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by paragraph (b)." (emphasis added). None of the policy exceptions enumerated in subparagraph (b) apply in the immediate matter. All communications which are protected by attorney-client privilege may not be divulged by Mr. Kennedy, and all communications which lack the protection of attorney-client privilege involve the knowledge of one or more persons to whom attorney-client privilege does not extend. Thus, there can be no knowledge possessed by Mr. Kennedy which could be used by Defendant other than knowledge which is also possessed by another party and thus discoverable through such means. As such, Mr. Kennedy is not a necessary witness due to the fact that another party may testify to any unprivileged communications sought by Defendant. Furthermore, Defendant fails to allege that Mr. Kirkland has waived privilege of any communications between himself and Mr. Kennedy.

Further, Defendant fails to include any authority that supports its position that mere speculation regarding a discovery dispute supports disqualification. To the contrary, the Court is well equipped to work through discovery disputes should they arise, as they often do in many cases in front of this and all courts. Moreover, Defendant's anticipation of such a dispute is premature. It is important to remember that Mr. Kirkland is not employed by Mr. Kennedy directly, rather he is an employee of AdvisorLaw. All communications relating to Mr. Kirkland's representation are privileged and non-discoverable and are distinct from communications regarding his employment and employment-related activities, which do not fall under attorney-client privilege. There is no basis for Defendant to believe these communications are not organized separately and that a

dispute is inevitable. Such an argument certainly does not meet the high burden imposed by courts in considering a motion to disqualify.

**C. In the Alternative, Mr. Kirkland Would Suffer a Substantial Hardship if Defendant's Motion is Granted.**

The third exception to the advocate-witness prohibition is contained in paragraph (a)(3) of C.R.P.C. 3.7, which permits a lawyer to continue his representation even if it is determined they are a necessary witness, if disqualification "would work substantial hardship on the client." This exception requires "a balancing . . . between the interests of the client and those of the tribunal and the opposing party." *See Id.,* Cmt. [4].

The substantial hardship test is a multi-factor consideration. Courts will take into account the amount of time and money the client has invested in the lawyer, the foreseeability of the need for the lawyer's testimony, and the likely difficulty of obtaining substitute counsel. *See Int'l Res. Ventures v. Diamond Mining,* 934 S.W.2d 218 (Ark. 1996) (no substantial hardship in disqualifying plaintiff's lawyer when, according to plaintiff's press release, plaintiff had "*famed Texas plaintiff's lawyer*" and three capable Arkansas lawyers already working on case); *People v. Pasillas-Sanchez,* 214 P.3d 520 (Colo. Ct. App. 2009) (no substantial hardship in disqualifying criminal defense lawyer who was only person other than defendant able to testify about material facts; defendant also represented by second lawyer and "*it would undercut defendant's opportunity to freely choose whether to testify*" if lawyer remained as trial counsel); *Beller v. Crow,* 742 N.W.2d 230 (Neb. 2007) (no substantial hardship in disqualifying lawyer admitted pro hac vice when local counsel involved in case and foreseeable that lawyer's testimony would be needed due to his involvement in incidents relevant to case).

The Court in *Int'l Ventures* determined that the substantial hardship exception did not apply when disqualifying one of plaintiff's lawyers because the plaintiff was additionally represented by a well-regarded lawyer in Texas as well as three competent Arkansas lawyers, all with experience in the practice area and knowledge of the case. Unlike the plaintiff in *Int'l Ventures*, Mr. Kirkland has been at all relevant times represented by Mr. Kennedy. If Mr. Kennedy were to be disqualified, Mr. Kirkland would have to start from square one with a new attorney, essentially wasting the money and efforts that have been put in to this point. The Court in the *Pasillas-Sanchez* matter determined that disqualification was appropriate because the defendant's lawyer being disqualified was the only other person besides the defendant who could testify to material facts; non-disqualification would undercut the defendant's opportunity to choose whether to testify; and the defendant was represented by a second attorney. The *Pasillas-Sanchez* case is distinguishable from the present matter because unlike the attorney in *Pasillas-Sanchez*, Mr. Kennedy is not the only person besides Mr. Kirkland that can testify to material facts, as explained thoroughly above in subsection (A) of this Opposition. Further, there is no issue of Mr. Kirkland's "right to remain silent" as this is a civil matter and no such right exists. The present matter is also distinguishable from the *Beller* case, in which the Court found no substantial hardship in disqualifying counsel admitted pro hac vice when local counsel was also involved in the case and it was foreseeable that the disqualified lawyer's testimony would be necessary. Again, these facts do not apply to the present case.

Disqualification of Mr. Kennedy would substantially prejudice Mr. Kirkland's case due to several factors that make Mr. Kennedy uniquely qualified as counsel for Mr. Kirkland. Most relevant is the fact that Mr. Kennedy founded and now leads the single largest entity representing clients in arbitration proceedings within and among the industry in which Defendant operates.

During calendar year 2018, Mr. Kennedy's company participated in 20% of all FINRA arbitrations for which an award/decision was rendered; nearly a 50% increase over the second most prevalent entity or individual (Bressler was at 14% of all FINRA awards). Secondly, Mr. Kennedy's unique experience has provided him with distinct and specialized knowledge of the industry practices, regulations governing the industry, and litigation tactics employed by firms such as the Defendant. And lastly, the financial burden of litigating against the Defendant is insurmountable by Mr. Kirkland; due in part to Defendant's refusal to pay commissions earned as well as their demand of repayment for the Notes. Mr. Kirkland would suffer a substantial financial hardship if the money he has already expended in this case is for naught.

While Mr. Kirkland recognizes that trial is not imminent, his counsel has expended significant time and energy preparing and building his case and is uniquely situated to continue representing Mr. Kirkland due to his focus and expertise in these areas of law.

## **CONCLUSION**

The mere fact that Mr. Kirkland's counsel may possess relevant information relating to the issues in this matter, and that the Defendant may want to call him as a witness, does not meet the high burden imposed on the Defendant to prevail on its Motion to Disqualify. Mr. Kennedy does not possess material information that is unobtainable elsewhere; his communications with Mr. Kirkland relating to representation are privileged and any anticipated discovery dispute is both premature and irrelevant to the relief requested; and Mr. Kirkland would suffer a substantial hardship if his counsel is disqualified. Accordingly, Defendant/Counterclaim Plaintiff's Motion to Disqualify Plaintiff's Counsel must be denied.

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of January 2019, I electronically filed the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

**Michelle Brand Muhleisen**
**Attorney for Defendant/Counterclaimant**
Ogletree Deakins Nash Smoak & Stewart, P.C.-Denver
2000 South Colorado Boulevard
Tower Three
Suite 900
Denver, CO 80222
303-764-6800
Fax: 303-831-9246
Email: michelle.muhleisen@ogletreedeakins.com


**Austin E. Smith**
**Attorney for Defendant/Counterclaimant**
Ogletree Deakins Nash Smoak & Stewart, P.C.-Denver
2000 South Colorado Boulevard
Tower Three
Suite 900
Denver, CO 80222
303-764-6800
Fax: 303-831-9246
Email: austin.smith@ogletreedeakins.com

*s/April Paige*
Paralegal, April Paige
HLBS Law
9737 Wadsworth Parkway, Suite G-100
Westminster, CO 80021
Phone: (720) 466-3505
Email: april.paige@hlbslaw.com